M. H. ROGERS, INC. *v.* UNITED STATES (No. 3655) [1]

United States Court of Customs and Patent Appeals, March 19, 1934

*Walden & Webster* (*J. L. Klingaman* of counsel) for appellant.

*Charles D. Lawrence,* Assistant Attorney General (*William Whynman,* special attorney, of counsel), for the United States.

[Oral argument February 15, 1934, by Mr. Klingaman and Mr. Whynman]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This appeal involves the proper classification of two hand-woven pieces of tapestry imported by appellant at the port of New York. One of the tapestries was described by the collector as "a wool tapestry for wall hanging", and was classified by him under paragraphs 1109 and 1119 of the Tariff Act of 1930, and assessed with duty at the rate of 50 cents per pound and 60 per centum ad valorem as woven wool fabrics in the piece valued at over $2 per pound. The other tapestry was described by the collector as "tapestry panels suitable for wall hangings, composed wholly or in chief value of silk, n.s.p.f.", and assessed with duty at the rate of 65 per centum under paragraph 1211 of the Tariff Act of 1930.

The tapestries were imported in different shipments, and appellant filed protests against the aforesaid classifications by the collector. Each of said protests claimed that the tapestries were free of duty under paragraph 1812 of said tariff act, which reads as follows:

PAR. 1812. Gobelin tapestries used as wall hangings.

The only issue in the case is whether the imported tapestries are "Gobelin tapestries used as wall hangings" within the meaning of said paragraph 1812.

Appellant in its brief in this court, and in oral argument by its counsel, attempted to raise another issue with respect to one of the tapestries, which will hereinafter be discussed.

Upon the trial of the case in the lower court, two witnesses testified for the appellant and two for the Government. It appears that one of the tapestries was imported from Belgium, and it was introduced

in evidence as Exhibit 1. The other tapestry was imported from France, and a photograph of the same was introduced in evidence as Illustrative Exhibit A.

The testimony introduced by appellant was to the effect that tapestries like those here involved were known to the trade as "Gobelin" tapestries, irrespective of their place of manufacture. Mark H. Rogers, the president of the appellant company, testified that he had examined tapestries that were made in the Gobelin factories in Paris and Beauvais, France, and further testified as follows:

Q. Can you tell from such examination whether or not there is any difference, so far as the method of production is concerned, between that character of tapestry and these exhibits we have here today?—A. The method of making them is almost the same all over the world, has been that way for hundreds of years. But the Gobelins that are made at the Gobelin plant in France are very much finer in quality. They only make very fine close stitches.

Appellant did not establish, and does not here claim, commercial designation of the term "Gobelin tapestry." In the brief of its counsel it is stated as follows:

Inasmuch as the merchandise comes within both the ordinary meaning of the term and the trade meaning thereof, there would seem to be no reason whatever for denying free entry. * * *

Of course, if the trade meaning of the term is the same as its ordinary meaning, there can be no commercial designation relied upon for the purpose of classification of the tapestries.

Definitions of Gobelin tapestry are as follows:

Webster's New International Dictionary, page 926:

Gobelin. Designating, or pertaining to, tapestry produced in the famous Gobelin works in Paris. Originally founded as a dyehouse by the Gobelin family, it was early established as a tapestry works, was made a royal manufactory under Louis XIV in 1662, and has since been owned by the government.

Funk & Wagnalls' New Standard Dictionary, page 1049:

Gobelin. a. Relating to the Gobelins factories in Paris and Beauvais, or to their tapestry.
Gobelin tapestry. 1. Tapestries of silk and wool or silk and cotton, made by the Gobelins. 2. A fancy-work imitation of tapestry.

Century Dictionary:

Gobelin. (a) Tapestry made by the Gobelins in Paris. (b) A kind of fancy-work made in imitation of such tapestry. It is worked from the back with silk or Berlin wool.

It is admitted that the tapestries here involved were not made at the Gobelin factories in France, but appellant contends that they are Gobelin tapestries within the foregoing definitions as imitations of tapestry made at said Gobelin factories.

The first question for determination is the sense in which Congress used the term "Gobelin tapestries." Did it intend to include in

such term tapestries of the character of those here involved, or only such tapestries as were made by the Gobelin factories in France?

It is elementary that the master rule in the consideration of all statutes is so to interpret them as to carry out the legislative intent. In the case at bar, did Congress intend that the term "Gobelin tapestries" should have the restricted meaning given by the lexicographers, or the broader meaning also given by some of them?

The provision for free entry of Gobelin tapestries used as wall hangings is new, appearing for the first time in said Tariff Act of 1930. It appears from the legislative history of said tariff act that the provision in question was inserted first by the Senate as an amendment to H.R. 2667, which became the Tariff Act of 1930. In the Senate Finance Committee report upon said bill, it explained said amendment, now paragraph 1812, as follows:

> The Committee amendment places on the free list Gobelin tapestries used as wall hangings, manufactured under the direction and the control of the French Government. .

It further appears from correspondence between the French Government and our State Department, found in "Tariff Readjustment, 1929", pages 10620, 10621, and 10622, that the French Government sought free entry into the United States of tapestries made at the Gobelin factories in France, placing such request upon the ground that such tapestries are really modern works of art, and should receive the same treatment that works of the fine arts receive in our tariff laws. This correspondence was transmitted by the State Department to the chairman of the Ways and Means Committee of the House of Representatives.

In view of the foregoing, we think there can be no doubt that in the enactment of said paragraph 1812, Congress intended that "Gobelin tapestries" should include only such tapestries as were made by the Gobelin factories in France, and we so hold.

Appellant calls attention to the fact that it appears from the Senate Finance Committee hearings upon said tariff bill, that the Government of Austria also asked for consideration of tapestries produced in that country, and argues therefrom that it should not be held that Congress honored the request of France and denied a like request from Austria. The request was based upon the following statement found in the hearings, Volume 18, page 7:

TAPESTRIES (GOBELINS, ETC.), PARAGRAPHS 909 AND 1430

In 1927 the Austrian exports to the United States amounted to $312,500.

The present rate of 45 percent (for machine-woven tapestries) is increased to 55 percent (new par. 908) and the present rate for handmade tapestries (75 and 90 percent) to 90 percent (new par. 1530).

There exists no American production for the kind of tapestries imported from Austria; higher duties would therefore only considerably reduce imports and

increase their price on the American market without benefit to any branch of the American industry.

We call attention to the fact that Austria made no representations that tapestries produced in that country were works of art, nor did it seek free entry of tapestries produced in that country. It only protested increasing the duties upon tapestries.

We can conceive of no reason why Congress should desire to permit free entry of *imitations* of Gobelin tapestries, and we think that the legislative history above recited makes it clear that it did not so intend.

Appellant further makes a contention which is stated in the brief of its counsel as follows:

Even if the construction adopted by the Customs Court is to obtain the panel covered by protest 498870–G, which was imported from Belgium, must be held free under paragraph 1812 by virtue of article XII of the Treaty of 1875 between Belgium and the United States, reading as follows:

In all that relates to duties of customs and navigation, the two high contracting parties promise, reciprocally, not to grant any favor, privilege or immunity to any other State which shall not instantly become common to the citizens and subjects of both parties respectively, gratuitously, if the concession or favor to such other State is gratuitous, and on allowing the same compensation, or its equivalent, if the concession is conditional.

Neither of the contracting parties shall lay upon goods proceeding from the soil or the industry of the other party, which may be imported into its ports, any other or higher duties of importation or reexportation than are laid upon the importation or reexportation of similar goods coming from any other foreign country.

The testimony of Rogers and Kleiser demonstrates that the product of the Gobelin factory and the Belgian panel are similar. * * *

This question is raised for the first time in this court. No claim is made in appellant's protest that the importation from Belgium was free of duty under said treaty with Belgium, and no such claim is found in the record before us, other than in appellant's assignments of error on appeal.

Assuming, without deciding, that the said treaty between Belgium and the United States might be relevant upon the question of the proper classification of the tapestry imported from Belgium, before appellant could secure the benefit of such treaty it was incumbent upon it to establish by a preponderance of evidence that said tapestry was similar to Gobelin tapestry. This was a question of fact, and appellant should have advised the Government in its protest, or at least upon the trial before the Customs Court, that it claimed the tapestry was free of duty under that treaty because it was similar to Gobelin tapestry made in the Government factories in France. Being so advised, the Government would have had an opportunity to produce testimony, if it could, rebutting the testimony of appellant that the tapestry in question is similar to the said Gobelin tapestry.

While appellant contends that the testimony in the record establishes that the tapestry imported from Belgium is similar to the

Gobelin tapestry made at the Gobelin factories in France, we find no direct testimony to that effect, but, on the contrary, said Rogers, the president of appellant company, testified that the Gobelins that are made at the Gobelin plants in France are very much finer in quality than the tapestries here involved.

However, we prefer to rest our decision with respect to the free entry of the Belgian tapestry upon the ground that, if the said tapestry is now claimed to be similar to Gobelin tapestry made in the Gobelin factories in France, an issue of fact is involved, to wit, similarity of goods within the meaning of said Belgian treaty, an issue of which the Government had no notice in the court below, which was not considered by the trial court, and which is raised here for the first time. We therefore will not here consider this question of fact.

We have already observed that appellant's assignments of error do raise this question. It is well established that an assignment of error cannot be availed of to import questions into a cause which the record does not show were raised and passed on in the court below. *Missouri Pacific Railway* v. *Fitzgerald*, 160 U.S. 556.

Nothing herein contained should be construed as holding that, in construing said paragraph 1812, we might not properly consider said treaty with Belgium as an aid in determining the legislative intent in enacting said paragraph. We have considered it in that connection, and find nothing therein to warrant a different construction than that hereinbefore indicated.

Under the Tariff Act of 1930, Gobelin tapestries made at the Gobelin factories in France are entitled to free importation from Belgium and from all other countries. If tapestries other than Gobelin tapestries are imported from Belgium and are in fact similar to tapestries made at the Gobelin factories in France, it may be that they are, under said treaty, entitled to free entry. We do not find it necessary here to define the word "similar" as that word is used in said treaty, for, as hereinbefore stated, that question is not properly before us upon this appeal.

For the reasons hereinbefore given, the judgment of the United States Customs Court is *affirmed*.